UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| COLBY ISTRE | * | CIVIL ACTION NO.: 1:16-CV-00328 |
| VS. | * | SECTION: |
| MONTCO OFFSHORE, INC., ET AL. | * | JUDGE: WILLIAM STEELE |
| VS. | * | MAGISTRATE JUDGE: KATHERINE P. NELSON |
| UMOE SCHAT-HARDING, INC., ET AL. | * | |

## **SECOND SUPPLEMENTAL AND AMENDED THIRD-PARTY DEMAND**

This Second Supplemental and Amended Third-Party Demand is within the meaning of Rule 14 of the Federal Rules of Civil Procedure. Made third-party defendant herein is PT Schneider Electric Manufacturing Batam ("SEMB"). SEMB is tendered directly to the plaintiff pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.

1.

SEMB is a foreign entity domiciled in Indonesia and was the manufacturer of the XS7C40FP260 limit switch involved in the incident at issue ("limit switch"). Said limit switch was sold to Montco Offshore, Inc. by UMOE Schat-Harding, Inc. as part of the davit system for the Montco lift boat LB Paul and delivered to Bayou LeBatre, Alabama, where it was installed on the LB Paul by Rodriguez Boat Builders.

#2334778

**Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over this matter pursuant to 28 USC 1332.

3.

Venue is proper in this district since the defective limit switch was delivered to Bayou LeBatre, Alabama and installed on the LB Paul by Rodriquez Boat Builders in Bayou La Batre, Alabama.

**Background**

4.

Colby Istre ("Istre") filed suit against Montco Offshore, Inc. and Montco, Inc. (collectively referred to as "Montco"), UMOE Schat-Harding, Inc. and UMOE Schat-Harding Brazil LLC (collectively referred to as "Schat-Harding") for personal injuries he allegedly sustained on October 3, 2010.

5.

Montco denied the allegations asserted by Istre and filed a third-party demand against Schat-Harding.

6.

Schat-Harding denied the allegations asserted by Istre and Montco, and asserts this action for any amounts it has been obligated to pay.

**Factual Allegations**

7.

Montco Offshore began construction of the LB Paul in 2008. The lifesaving equipment aboard the vessel was, in part, supplied by Schat-Harding and included the limit switch at issue.

8.

SEMB designed, manufactured, and distributed the limit switch at issue.

9.

During the manufacturing of the limit switch, SEMB stamped it with a rating code of "IP67", an international rating which means the switch is dust tight **and may be submerged in water**. The switch was also stamped with a United States Exposure Type rating of "Type 12, 4x". The fact that the instant switch is stamped with both international and United States ratings establishes that SEMB intended its switches to be sold and distributed world-wide, including purposely availing itself of the United States market.

10.

After manufacturing the limit switch, SEMB shipped it through the Schneider Electric worldwide distribution network to either Evreux, France or Singapore. From there, other Schneider Electric entities shipped the limit switch through the stream of commerce to a Schneider Electric distribution facility in Hungary, and upon information and belief then to the Czech Republic where it was sold by a Schneider Electric entity, Schneider Czech, to Q-Elektrik.

11.

On October 30, 2008, Schat-Harding issued purchaser order No. NOBE040542 to ABB s.r.o., to procure the limit switch, which ABB did from Q-Elekrik.  The purchase order specifically referenced Schat-Harding drawing no. N73330, which identified the XS7C40FP260 model limit switch for use with the LB Paul project.  Schat-Harding's request for that particular limit switch was based on SEMB's representation that it was intended for use in a marine environment, such as that in which the LB Paul would be working.

12.

By December 12, 2008, all of the component parts of the davit system sold by Schat-Harding to Montco, including two XS7C40FP260 model limit switches, were shipped by Schat-Harding to Rodrigues Brothers in Bayou La Batre, Alabama for installation on the LB Paul.

13.

As all of the XS7C40FP260 model limit switches shipped through Schneider Electric's international distribution system, including the switch at issue, are intended by Schneider to be sold worldwide, including in marine environments in the United States, it is was not only expected, but foreseeable, that the limit switch at issue could eventually be installed in a life-saving system on a commercial vessel like the LB Paul.

14.

As a result, SEMB knew, or should have known, their acts would have consequences within the United States and, in particular, the State of Alabama.

15.

Upon information and belief, SEMB purposely availed itself of the markets in the United States and, in particular, the State of Alabama, and also placed its XS7C40FP260 limit switches, including the switch at issue, and other products into the stream of commerce and derived substantial revenue from interstate commerce within the United States and, in particular, the State of Alabama.

16.

SEMB delivered the instant limit switch into the stream of commerce with the expectation that it would be purchased and/or used by consumers in the State of Alabama. Accordingly, SEMB's conduct and connection with Alabama are such that SEMB could reasonably anticipate being haled into court in Alabama.

17.

As alleged by Istre and Montco, on October 3, 2010, the LB Paul's rescue boat was being lifted from the water by the davit system. Inside the boat were Istre and a co-worker. The limit switch for the davit system failed, it is believed as a result of water intrusion in the limit switch, causing the wire rope lifting the rescue boat to snap. As a result, Istre and his co-worker were thrown from the boat into the water far below. Shortly thereafter, the rescue boat also fell, landing on Istre's head and neck causing severe and permanently disabling injuries. The accident was caused and/or contributed by a defect in the design, construction, composition, manufacture, warning and/or representation of the limit switch.

18.

The limit switch was used as intended by SEMB.

## COUNT 1: Alabama Extended Manufacturers Liability Doctrine

19.

Third party plaintiff, Schat-Harding, incorporates herein all paragraphs 1 through 18 above in the Second Supplemental and Amended Third Party Demand.

20.

SEMB designed, manufactured, distributed, and sold the limit switch at issue, through the Schneider Electric worldwide distribution network.  Therefore, SEBM placed the limit switch in the stream of commerce, where it ultimately reached Montco and plaintiff, Istre, foreseeable users of said product.

21.

The XS7C40FP260 limit switch was being used in an intended and expected manner at the time of the accident.

22.

When SEMB  placed the limit switch on the market for sale, it was in an defective condition and unreasonably dangerous in the following, non-exclusive, ways:

a. Despite being labeled and marketed for use in a marine environment, when placed in a marine environment, such as the LB Paul, it was not suitable for that environment;

b. The design of the limit switch was not water tight as represented by SEMB;

c. The limit switch was insufficiently and inadequately tested to ensure that the product was reasonably safe for its represented and intended use; and

d. The instructions and warnings that accompanied the XS7C40FP260 limit switch were inadequate and failed to apprise consumers and ultimate users of the potential risk of serious injuries if the limit switch was used in a marine environment.

23.

As a direct and proximate result of the alleged unreasonably dangerous condition created by the third party defendant, SEMB, plaintiff, Istre, was seriously injured causing him to suffer severe and permanent physical and mental damages for which he is entitled to recover all applicable general and special damages.

WHEREFORE, the above premises considered, third party plaintiff, Schat-Harding, demands judgment against third party defendant, SEMB, for damages deemed reasonable.

**COUNT II:  Negligence and Gross Negligence**

24.

Third party plaintiff, Schat-Harding, incorporates all paragraphs 1 through 18 above in the Second Supplemental and Amended Third Party Demand as if set out here in full.

25.

SEMB has a duty to exercise reasonable care in designing, manufacturing, distributing, warning and selling its limit switches, including the limit switch at issue so that said limit switch is reasonably safe when used in a marine environment, and owed a duty to the users of said limit switch to warn about the potential dangers of using it in a marine environment.

26.

In designing, manufacturing, and distributing the limit switch at issue in a defective condition, SEMB was negligent and grossly negligent in the following, non-exclusive, ways:

a. Failing to design the limit switch in such a manner that when placed in a marine environment, such as the LB Paul, was suitable for that environment despite SEMB's representations to the contrary;

b. The design of the limit switch was not water tight as represented by SEMB;

c. The limit switch was insufficiently and inadequately tested to ensure that it was reasonably safe for use; and

d. The instructions and warnings that accompanied the limit switch were inadequate and failed to apprise consumers and ultimate users of the potential risk of serious injuries if the limit switch was used in a marine environment.

27.

Safer, practical, feasible, and alternative designs for the limit switch were available to SEMB at the time it designed, manufactured, and sold the limit switch in question.

28.

As a direct and proximate result of the alleged negligence of SEMB, plaintiff, Istre, was seriously injured causing him to suffer severe and permanent physical and mental damages for which he is entitled to recover all applicable general and special damages.

WHEREFORE, the above premises considered, third party plaintiff, Schat-Harding, demands judgment against third party defendant, SEMB, for damages in the amount deemed reasonable.

## COUNT III:  Breach of Warranty of Merchantability

29.

Third party plaintiff, Schat-Harding, incorporates all paragraphs 1 through 18 above in the Second Supplemental and Amended Third Party Demand as if set out here in full.

30.

SEMB is engaged in the business of designing, manufacturing, distributing, and selling limit switches, including the limit switch at issue.

31.

SEMB promoted, distributed, and sold said limit switch to be used in a marine environment.

32.

The limit switch was defective as it was not suited for a marine environment and not fit for the purpose for which it was represented as being suitable.

33.

As a direct and proximate result of the defective and unmerchantable limit switch, plaintiff, Istre, was seriously injured causing him to suffer severe and permanent physical and mental damages for which he is entitled to recover all applicable general and special damages.

WHEREFORE, the above premises considered, third party plaintiff, Schat-Harding, demands judgment against third party defendant, SEMB, for damages in the amount deemed reasonable.

**COUNT IV: Breach of Implied Warranty of Fitness For a Particular Purpose**

34.

Third party plaintiff, Schat-Harding, incorporates all paragraphs 1 through 18 above in the Second Supplemental and Amended Third Party Demand as if set out here in full.

35.

SEMB is engaged in the business of designing, manufacturing, distributing, and selling limit switches, including the limit switch at issue.

36.

SEMB promoted, distributed, and sold said limit switch and warranted it for use in a marine environment.

37.

The limit switch was allegedly defective as it was not suited for a marine environment and not fit for the ordinary purpose it was being used.

38.

As a direct and proximate result of the alleged defective and unmerchantable limit switch, plaintiff, Istre, was seriously injured causing him to suffer severe and permanent physical and mental damages for which he is entitled to recover all applicable general and special damages.

WHEREFORE, the above premises considered, third party plaintiff, Schat-Harding, demands judgment against third party defendant, SEMB, for damages in the amount deemed reasonable.

## Count V: Restatement of Torts

Third party plaintiff, Schat-Harding, incorporates all paragraphs 1 through 18 above in the Second Supplemental and Amended Third Party Demand as if set out here in full.

39.

SEMB is engaged in the business of designing, manufacturing, distributing, and selling limit switches, including the limit switch at issue.

40.

SEMB designed, manufactured, distributed, and sold the limit switch at issue. SEMB placed said limit switch in the stream of commerce, where it ultimately reached Montco and plaintiff, Istre, foreseeable users of said product.

41.

SEMB designed, manufactured, and distributed the limit switch at issue which was unreasonably dangerous in the following non-exclusive ways:

  a. The limit switch was designed in such a manner that when placed in a marine environment, such as the LB Paul, was suitable for that environment despite SEMB's representations to the contrary and that there were alternative designs available.

  b. The design of the limit switch was not water tight as represented by SEMB;

  c. The limit switch was insufficiently and inadequately tested to ensure that it was reasonably safe for use; and

  d. The instructions and warnings that accompanied the limit switch were inadequate and failed to apprise consumers and ultimate users of the potential risk of serious injuries if the limit switch was used in a marine environment.

11

42.

As a direct and proximate result of the negligent and gross negligence of SEMB, plaintiff, Istre, was seriously injured causing him to suffer severe and permanent physical and mental damages for which he is entitled to recover all applicable general and special damages.

WHEREFORE, the above premises considered, third party plaintiff, Schat-Harding, demands judgment against third party defendant, SEMB, for compensatory and/or punitive damages in the amount deemed reasonable by a jury plus costs of this action.

43.

By reason of the fault of SEMB, as articulated herein, third-party plaintiffs are entitled to recover from third-party defendants by way of tort indemnity and/or contribution.

44.

Defendants/third-party plaintiffs, Schat-Harding, pray for a trial by jury on all matters.

**WHEREFORE**, UMOE Schat-Harding, Inc. and UMOE Schat-Harding of Brazil, LLC, hereby demand judgment for damages in being required to defend the actions filed against it by Colby Istre, Montco Offshore, Inc., and Montco, Inc., for any damages it may be required to pay due to the alleged defects in the limit switch, and for other damages suffered by UMOE Schat-Harding, Inc. and UMOE Schat-Harding of Brazil, LLC as a result of the defect in the limit switch.  UMOE Schat-Harding, Inc. and UMOE Schat-Harding of Brazil, LLC further pray for a trial by jury and all equitable and just relief.

Respectfully Submitted,

**BLUE WILLIAMS, L.L.P.**

/s/PAUL D. PALERMO
**PAUL D. PALERMO, #19725**
**CRAIG V. SWEENEY #23954**
3421 N. Causeway Boulevard, Suite 900
Metairie, LA 70002-3760
Telephone:  (504) 831-4091
Facsimile:  (504) 837-1182
Attorneys for Defendants and Third-Party Plaintiffs, UMOE Schat-Harding, Inc. and UMOE Schat-Harding of Brazil, L.L.C.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon counsel for all parties by filing the same on this 31st day of August 2016 using the Court's electronic CM/ECF system, which will send notice of said filing to all attorneys of record.

s/PAUL D. PALERMO
Paul D. Palermo