UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UMOE SCHAT-HARDING, INC, ET AL. | CIVIL ACTION NO. 1:17-cv-00193 |
| VERSUS | JUDGE WILLIAM H. STEELE |
| PT SCHNEIDER ELECTRIC MANUFACTURING BATAM | MAGISTRATE JUDGE KATHERINE P. NELSON |

**REPLY MEMORANDUM IN SUPPORT OF
PT SCHNEIDER ELECTRIC MANUFACTURING BATAM'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**I.     Introduction**

The UMOE defendants stipulate in their opposition – as they did in the Eastern District of Louisiana[1] - that this motion is to be decided solely on specific jurisdiction principles. They specifically brief only specific jurisdiction and they make the statement, "…when a plaintiff has alleged specific jurisdiction as here…."[2]

Nonetheless, the opposition does not limit itself to specific jurisdiction principles. Its argument merges general jurisdiction principles, *albeit*, without citation to the controlling Supreme Court decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler AG v. Bauman*, 134 S.Ct.746 (2014), or this Court's decision in *Matthews v. Brookstone Stores, Inc*., 469 F.Supp. 2d 1056 (S.D. Ala. 2007).

This reply will show that the opposition is insufficient. We will focus briefly on the following faults in the opposition:

---

[1] 16-0328 Doc. 207 at p. 5 (3/22/2016 Order and Reasons).
[2] UMOE defendants' opposition memorandum (hereafter "UMOE Mem.", p. 13, sub-caption "C," and  p. 14, lines 5-6 (underscore added).

(a) Foreseeability alone is insufficient to justify assertion of jurisdiction.

(b) General jurisdiction factors are irrelevant to the analysis.

(c) *Bristol-Myers* and *Hinrichs* cannot be distinguished.

(d) The opposition misapplies precedents.

(e) The requested discovery is irrelevant.

## II.   Argument

### (a) Mere foreseeability is insufficient.

The opposition repeatedly emphasizes foreseeability as a basis for assertion of jurisdiction – alleged foreseeability on PT SEMB's part that the "subject switch,"[3] manufactured by it, would find its way to, and be sold (allegedly) in, Alabama.

There is no issue about the fact that PT SEMB manufactures products that it ships to affiliated Schneider Electric international distribution centers. From there, other Schneider Electric affiliates may distribute world-wide. But, the Firdaus declaration (Doc. 23-1) states that PT SEMB is not involved in this subsequent distribution (*Id.*¶10) and does not make any consumer sales. *Id.*¶8.

The UMOE defendant's conjecture is not sufficient to rebut the declaration. The opposition, in fact, is premised upon conjecture as to sales of PT SEMB products.[4] Whatever consumer sales occur are not sales by PT SEMB. Firdaus Dec., Doc. 23-1 at ¶8.

---

[3] The phrase "subject switch" is misleading as noted in note 4 of PT SEMB's initial memorandum (Doc. 23-2). Although the UMOE defendants assert that on the day of the accident the "subject switch" was photographed (UMOE Mem., p. 5) and that it is "undisputed" that their Exhibit 1 is a photo of the subject switch (*Id.*), their certainty is contradicted by their filing on July 23, 2013 to which they attached a photograph of a different switch as "the limit switch at issue." 16-0328 Doc. 72 at p. 3, and Exhibit A.

[4] E.g., UMOE Mem., p. 11, Caption "F" and following; p. 16, lines 3-4; pp. 17-18 (bullet points).

While foreseeability is an element of the stream of commerce theory of specific jurisdiction, mere foreseeability of the likelihood that a product will find its way into the forum state is insufficient. The defendant must also engage in conduct in the forum state "such that it should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 298 (1980); *Matthews v. Brookstone Stores, Inc.*, 469 F.Supp. 2d.1056, 1060; *Hinrichs v. General Motors of Canada, Ltd.*, 2016 WL 3461177 at *27 (Ala. 6/24/2016). As these cases point out, the reason mere foreseeability is insufficient is constitutional. Foreseeability must be accompanied by some other conduct and contact with the forum state. That other conduct and contact is absent in this case.

### (b) General jurisdiction principles are irrelevant.

Much of what the opposition discusses is relevant only to general jurisdiction – if even relevant to that under the "at home" test. *Daimler*, 134 S.Ct. at 749.

The facts that (i) PT SEMB is affiliated with a global enterprise (UMOE Mem. p. 3), or (ii) products manufactured by PT SEMB might find their way to Alabama, for argument's sake, even in the same quantities as they found their way to Louisiana (*Id*. at pp. 11-12), are irrelevant to the specific jurisdiction analysis.

The UMOE defendants ignore the principle that specific jurisdiction requires that the claim must arise out of or relate to the defendant's contacts with the forum state. "In other words, there must be an affiliation between the forum and the underlying controversy…." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S.Ct. 1773, 1780-81 (2017); *Hinrichs*, 2016 WL 3461177 at *23-27.

Where the plaintiff is not a resident of the forum state, does not claim to have suffered harm in the forum state, and the conduct giving rise to the non-resident's claim occurred elsewhere,

specific jurisdiction is absent. *Bristol-Myers*, 137 S.Ct. at 1782; *Matthews*, 469 F.Supp. at 1065-66.

### (c) *Bristol-Myers* and *Hinrichs* cannot be distinguished.

The UMOE defendants attempt to distinguish *Bristol-Myers* and similar cases on the basis that, "the offending action, the installation of the defective limit switch on the M/V LB Paul, took place in Alabama." UMOE Mem. p. 22. But, if the switch, *arguendo*, was defective as alleged in ¶22 of the third party complaint (Doc. 2), none of the conduct related to those alleged defects occurred in Alabama. From PT SEMB's perspective, that a switch manufactured by it ended up in Alabama – whether or not attached to the davit arm – was fortuitous. And, it arrived there by the fortuitous actions of non-affiliated entities: Q-Elektrik, ABB s.r.o., and UMOE Schat-Harding AS.

By the UMOE defendant's logic, the alleged, "offending action" occurred in Louisiana at the point when the davit arm was put in use. This logic has no merit.

Similarly, *Hinrichs* cannot be distinguished. The UMOE defendants argue that the fortuitous arrival of the switch in Alabama ended the stream of commerce there and that is sufficient to distinguish *Hinrichs*. But *Hinrichs* said more in accordance with constitutional principles. "Here, there simply is not 'suit-related conduct' that creates a substantial connection between [the foreign manufacturer] and Alabama if the vehicle was not sold in Alabama, even though *Hinrichs* was injured in Alabama." 2016 WL 3461177 at *27.

In *Hinrichs*, as here, the product fortuitously arrived in Alabama. To have accepted plaintiff's argument in *Hinrichs*, or the UMOE defendants' argument here, would be equivalent to holding that the product was the agent for service of process for the defendant capable of creating

specific personal jurisdiction wherever it went. That notion was soundly rejected in *World-Wide Volkswagen*. 444 U.S. at 296.

The fact is, by the UMOE defendants' own admission, the stream of commerce for the PT SEMB switch ended in Slaný, Czech Republic, when it was sold by a Schneider affiliate to Q-Elektrik. *Hinrichs* viewed the sale of the GM Sierra truck in this light citing with approval, *D' Jamoos v. Pilatus Aircraft Ltd*., 566 F. 3d 94 (3rd Cir. 2009). "[T]he aircraft… was sold in France, not Pennsylvania, the forum state, and reached the United States through a series of resales in which [the manufacturer] was not involved, none of which took place in Pennsylvania." *Hinrichs*, 2016 WL 3461177 at *23-24[5].

Likewise, here, the theoretical "subject switch" reached the United States and Alabama through a series of resales, none of which involved PT SEMB, or a Schneider affiliate, and none of which took place in Alabama.

Furthermore, the UMOE defendants are on thin ice in contending that the switch was not incorporated into the davit system in Slaný, Czech Republic. Judge Milazzo twice rejected the UMOE defendants' contention. 16-0328 Doc. 155 at p. 7 (2/26/2014); 16-0328 Doc. 207 at p. 7 (3/22/2016). She was justified in doing so given the UMOE defendants' admissions to the Court in a July 23, 2013 memorandum. 16-0328 Doc. 72 at p. 3.[6] Although the UMOE defendants twice state that they "later" learned facts contrary to Judge Milazzo's holding, they ignore the

---

[5] This quote is the Alabama Supreme Court's own description of the case.
[6] See note 16 at p. 4 of PT SEMB's original memorandum. This admission is also inherent in the questions propounded to Mr. West during his deposition as quoted at pages 10 and 11 of the UMOE defendants' memorandum.

fact that the January 16, 2014 Kavalier declaration that they rely upon here was submitted by them to Judge Milazzo before either of her two rulings.[7]

### (d) The UMOE defendants misapply precedents.

Three cases in particular are relied upon by the UMOE defendants. None of these cases is directly applicable here.

In *Cincinatti Ins. Co. v. Belkin*, 2008 WL 4949783 (S.D. Ala. 2008), a foreign manufacturer's product was sold or delivered to an Alabama resident who was injured in Alabama under circumstances where the manufacturer could reasonably anticipate being haled into court in Alabama. See *Id.* at n. 3. But, the most distinguishing factor was discussed by this Court in note 4. The manufacturer had consented to jurisdiction of the main complaint but objected to jurisdiction over a cross-claim by a co-defendant – a position that this Court rejected as "not tenable." *Id* at n. 4.

Similarly, *Simmons v. Big #1 Water Sports, Inc.*, 908 F.Supp. 2d 1224 (N.D. Ala. 2012) involved a suit by an Alabama resident who purchased a Canadian-manufactured product in Alabama and was injured in Alabama. The Court found specific jurisdiction over a Canadian

---

[7] U.S.D.C., ED LA, No. 12-0258, Doc. 145, Exhibit 6 filed under seal on January 17, 2014, and Doc. 201 at note 22 filed under seal. A possible explanation is found in the carefully worded language of the January 16, 2014 Kavalier declaration. (Ext. 10 to UMOE Mem). Kavalier states that the two switches were not mounted on the davit system "at the time of packaging and shipping." If that is true, and Kavalier gives no basis for his personal knowledge, it is probable that UMOE Schat-Harding AS assembled and tested the davit system in Slaný, Czech Republic, then broke it down into segments for shipping. Kavalier might have said that the switches were "never" attached or never removed from their original cartons, but he didn't. The UMOE defendants have had over three years to clear up any error in Judge Milazzo's factual findings.

component manufacturer who made direct shipments to Alabama of replacement parts and other products and who, therefore, could reasonably expect to be haled into court in Alabama.[8]

However, in accord with U.S. Supreme Court precedents, *Hinrichs* distinguishes cases like *Simmons*: "Here, there is no evidence of any suit-related contact between GM Canada and Alabama." 2016 WL 3461177 at *23. *Hinrichs* correctly holds that to base specific personal jurisdiction on the proposition that the defendant understood that its product had broad distribution (the UMOE defendant's main contention) is tantamount to making foreseeability alone a sufficient benchmark for personal jurisdiction, something the U.S. Supreme Court has never approved. *Id.* at *24.

*Bean Dredging Corp. v. Dredge Tech Corp.*, 744 F.2d 1081 (5th Cir. 1984) is inapplicable because the court conflates general and specific jurisdiction principles. *Bean's* reference to stream of commerce is in the context of a discussion of general jurisdiction and the sole issue presented – "sufficient minimum contacts" – based upon the "thousands" of products that the defendant directly introduced into the stream of commerce in the United States. 744 F.2d at 1083. *Bean* does not address the general vs. specific dichotomy that governs the analysis today. *Bean* does not hold up under the "home state" principle established in *Goodyear*. 131 S.Ct. 1286. Nor does *Bean* hold up under a proper specific jurisdiction analysis.[9]

---

[8] None of these types of facts exist here. And, the Firdaus declaration specifically negates any sales activity by PT SEMB and any shipments or business activity in the State of Alabama. Doc. 23-1 at ¶¶8 and 11.

[9] The UMOE defendants also cite *Home Bingo Network, Inc. v. Chayevsky*, 428 F.Supp. 2d 1232 (S.D. Ala. 2006). This was a patent infringement action. The defendant entity did not contest jurisdiction but individual officers and directors did. These individuals argued that their business contacts with Alabama were corporate, not personal. They also raised the fiduciary shield argument. This Court did not buy either argument in its contacts analysis. The facts are completely dissimilar.

**(e) The discovery that the UMOE defendants seek is irrelevant.**

Because this case requires a specific jurisdiction analysis as to a foreign manufacturer, it is the movement of the specific product item at issue in the stream of commerce that is relevant. Relevant inquiries are: (a) whether the product arrived in Alabama because of PT SEMB's conduct, or as in *Hinrichs* (2016 WL 3461177 at *23-24), fortuitously through the actions of others; (b) whether PT SEMB sold or delivered its product in Alabama to an Alabama resident; and (c) whether the injury occurred in Alabama.

The answer to each of these inquiries is the negative. Those answers are established on this record.

Examination of the proposed discovery (Doc. 26-13) shows that the UMOE defendants are looking to discover presumed general distribution and sales activities of PT SEMB which are irrelevant to the specific jurisdiction analysis.[10]

Furthermore, the Firdaus declaration already answers these questions. PT SEMB does not sell to consumers and ships its products only to Schneider Electric distribution centers.

The discovery sought is irrelevant because the answers are apparent and because the answers would relate solely to a general jurisdiction analysis which the UMOE defendants have waived and which could never measure up under the home state test as applied in *Goodyear, Daimler,* and *Bristol-Myers.*

**CONCLUSION**

The UMOE defendants have not proven and cannot prove a *prima facie* case of personal jurisdiction over PT SEMB. Seemingly, they concede this.

---

[10] The UMOE defendants summarize their intent as follows: "…limited discovery on this issue of Schneider's extensive distribution network and [PT] SEMB's reasonable expectations regarding the markets into which its products may enter." UMOE Mem. p. 28.

There is no evidence that PT SEMB engaged in any suit-related conduct in Alabama that in any way wronged the UMOE defendants (or Mr. Istre) in Alabama. Therefore, PT SEMB requests that its motion be granted.

Respectfully submitted,

GORDON, ARATA, MONTGOMERY, BARNETT

BY: /s/ Daniel Lund
    DANIEL LUND, T.A.
    dlund@gamb.law
    C. BYRON BERRY, JR.
    bberry@gamb.law
    R. ETHAN ZUBIC
    ezubic@gamb.law
    201 St. Charles Avenue, 40th Floor
    New Orleans, Louisiana  70170
    Phone:  504-582-1111, Fax:  504-582-1121

    BRADY RADCLIFF & BROWN LLP

BY: /s/ Donald C. Radcliff
    DONALD C. RADCLIFF (#ASB-1662-F58D)
    dradcliff@brblawyers.com
    1600 Wells Fargo Building
    61 Saint Joseph Street
    Mobile, Alabama 36602
    Phone:  251-405-0077, Fax:  251-405-0076

    *Attorneys for Third-Party Defendant,*
    *PT Schneider Electric Manufacturing Batam*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2017, the foregoing Reply Memorandum was filed with the Clerk of Court using the CM/ECF system, and a copy of the foregoing was served via the CM/ECF system on all counsel of record in this matter.


_____*/s/ Donald C. Radcliff*_____
DONALD C. RADCLIFF