# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

UMOE SCHAT-HARDING, INC., et al., )
                                         )
       **Plaintiffs,**                   )
                                         )
v.                                       ) CIVIL ACTION 17-0193-WS-N
                                         )
PT SCHNEIDER ELECTRIC     )
MANUFACTURING BATAM,      )
et al.,                                  )
                                         )
       **Defendant.**                    )

## ORDER

This matter is before the Court on the defendant's motion to dismiss for lack of personal jurisdiction. (Doc. 23). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 23, 26, 27), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion to dismiss is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff in the underlying admiralty action ("Istre"), which was filed in the Eastern District of Louisiana, sued the plaintiffs herein ("UMOE"), and others, including his employer ("Montco") for injuries he sustained when a rescue boat being hoisted aboard a work vessel ("the Vessel") fell and struck him. The Vessel was built for Montco at a Bayou La Batre shipyard; UMOE supplied the davit system for the Vessel. Istre claimed the davit's cable snapped due to UMOE's employment of an improper limit switch ("the Switch"). UMOE filed a third-party demand against the defendant herein ("Batam"), the manufacturer of the

---

[1] The defendant's request for oral argument, (Doc. 24), construed as a motion for such relief, is **denied**. Civil Local Rule 7(h).

Switch. Batam successfully pursued a motion to dismiss for lack of personal jurisdiction.

Once all other claims were resolved in Louisiana, Istre and UMOE had their remnant of the action transferred to this District. Without objection, the Court severed UMOE's newly re-asserted third-party claim against Batam and opened this separate civil action, after UMOE predicted that service of process would consume more than a year.

**DISCUSSION**

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotes omitted). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id*. (internal quotes omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun International Hotels, Ltd*., 288 F.3d 1264, 1269 (11th Cir. 2002); *accord Diamond Crystal Brands, Inc. v. Food Movers International, Inc*., 593 F.3d 1249, 1257 (11th Cir. 2010).

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary, not mandatory. *E.g., Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2008). Because the parties have not requested an evidentiary hearing, the Court exercises its discretion not to conduct one. Absent such a hearing, the plaintiff's burden is to present enough evidence, construed most favorably to the plaintiff, to withstand a motion for directed verdict. *Id*.

The facts regarding the Switch, according to UMOE, are as follows. Batam is an Indonesian subsidiary of Schneider Electric ("Schneider"), which is a global enterprise with hundreds of related companies. Batam manufactured the Switch, a Telemecanique XS7C40FP260, in Indonesia. Batam produces many such limit switches, which bear stamps reflecting international and United States ratings for sealing effectiveness.

Batam individually packaged and bulk shipped over a thousand of these limit switches, including the Switch, to a Schneider subsidiary's international distribution center in France. (Doc. 26-4). The Switch and others were then shipped to a different Schneider subsidiary's regional distribution center in Hungary. (Doc. 26-3 at 7-8). This entity sold a dozen limit switches, including the Switch, to Q-Electrik, (Doc. 26-5), a retailer apparently located in the Czech Republic and unaffiliated with Schneider.

Meanwhile, UMOE issued drawings for construction of the davit system, which specified use of Telemecanique XS7C40FP260 limit switches. In the Czech Republic, an entity related to UMOE ("UMOE As") issued a purchase order for same to a Czech supplier ("ABB"), (Doc. 26-8), which acquired two limit switches, including the Switch, from Q-Electrik. The limit switches were invoiced and delivered to another UMOE entity in the Czech Republic ("UMOE s.r.o."), (Doc. 26-9), which then shipped the davit system, along with the limit switches in their original packaging, to the shipyard in Bayou La Batre. (Doc. 26-10). There the switches were incorporated into the davit system and the davit system into the Vessel.[2]

---

[2] Batam insists that the Court must credit the Louisiana judge's statement that the Switch was incorporated into the davit system while still in the Czech Republic. (Doc. 27 at 5-6). Batam identifies no legal principle requiring the Court to give preclusive effect to her statement, especially given that it was unnecessary to her ruling and that Batam can cite to no evidence clearly supporting the proposition. As noted, on motion to dismiss it is the plaintiff's version of the evidence that controls, and UMOE has offered evidence supporting its position. (Doc. 26-10 at 2-3). While Batam complains that the declaration could be read as artfully skirting the question, it can reasonably (indeed, more

UMOE relies on additional evidence to establish personal jurisdiction over Batam. Schneider through its subsidiaries maintains two international distribution centers, one in France and the other in Singapore. The international distribution center in France (to which the Switch was shipped by Batam) receives products from various Schneider subsidiary manufacturing locations and redistributes them among a number of Schneider subsidiary regional distribution centers around the world, including those of a Schneider subsidiary ("Schneider USA") in Texas, Ohio and Pennsylvania. (Doc. 26-3 at 9-12). Batam also ships some limit switches directly to Schneider USA. (Doc. 23-1 at 2). Schneider through unidentified subsidiaries maintains two sales offices in Alabama and services southeast Alabama through a third office located in Panama City, Florida. (Doc. 26-12). UMOE has not conducted jurisdictional discovery to determine the volume of actual sales in Alabama, but while the action was pending in the Eastern District of Louisiana, UMOE conducted such discovery as to Louisiana and learned that over 200 Telemecanique XS7C40FP260 limit switches manufactured by Batam were sold to Louisiana retailers between 2008 and 2012. (Doc. 26-11 at 9, 24, 37, 50, 61).

A forum state's personal jurisdiction over a defendant may be either general or specific. "A court may assert general jurisdiction … to hear any and all claims against [foreign entities] when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotes omitted). That is, if general jurisdiction exists, the foreign entity is subject to suit in the forum state even if the cause of action asserted against it is wholly unrelated to its activities in the state. *Walden v. Flore*, 134 S. Ct. 1115, 1121 n.6 (2014). "But only a limited set of affiliations with a forum will render a

---

reasonably) be read as negating the Switch's incorporation into the davit system before both arrived in Alabama. As noted, the plaintiff on motion to dismiss obtains the benefit of that reasonable reading.

defendant amenable to general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (internal quotes omitted). The "at home" limitation means the defendant's contacts with the forum must be such that it is "comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.11 (2014). Faced with this daunting burden, UMOE prudently confines its argument to specific jurisdiction. (Doc. 26 at 13-25).

"[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop*, 564 U.S. at 923. That is, "[a] defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and if the forum's exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (internal quotes omitted). The first question is thus whether Batam has sufficient minimum contacts with Alabama to support the exercise of specific jurisdiction over it in this forum.

"To constitute constitutionally minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it." *Vermeulen*, 985 F.2d at 1546. "Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." *Id*. (internal quotes omitted). "Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." *Id*. (internal quotes omitted).

To satisfy these criteria, UMOE relies on a "stream of commerce" theory. (Doc. 26 at 14-25). The Supreme Court fashioned this term in *World-Wide*

5

*Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), ruling that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id*. at 297. UMOE argues that the Switch entered the stream of commerce in Indonesia and did not leave the stream of commerce until it was incorporated into the Vessel in Alabama.

The *World-Wide Volkswagen* Court did not define "stream of commerce." In a later opinion, a four-Justice plurality[3] stated that the term "refers to the movement of goods from manufacturers through distributors to consumers." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (Kennedy, J.). A different four Justices[4] described the term as "refer[ring] not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring in part and concurring in the judgment). UMOE cites both *McIntyre* and *Asahi*, (Doc. 26 at 15-16, 20), and it identifies no more lenient definition of the term than is contained in those cases. The Court therefore assumes for purposes of the instant motion that the stream-of-commerce theory requires that: (1) the forum state is where the product reaches the retail consumer; and (2) the product's path to the forum state follows the regular and anticipated flow of such products from the defendant manufacturer.

Batam asserts that UMOE has "admi[tted]" the Switch left the stream of commerce when it was acquired by Q-Electrik in the Czech Republic. (Doc. 27 at 5). The Court can find no such admission in UMOE's brief; on the contrary, UMOE insists that the Switch "exited the stream of commerce in Alabama." (Doc. 26 at 22).

---

[3] Justices Kennedy, Scalia and Thomas and Chief Justice Roberts.

[4] Justices Brennan, White, Marshall and Blackmun.

Batam also argues the Switch left the stream of commerce when ABB delivered it to UMOE s.r.o., that transfer occurring in the Czech Republic. (Doc. 23-2 at 4). Batam's argument, however, expressly rests on the premise that UMOE s.r.o. incorporated the Switch into the davit system in the Czech Republic, such as to make that entity the "end user" of the Switch. (*Id*.). As noted, however, UMOE's evidence is to the contrary, and UMOE's version of the facts controls on motion to dismiss.

Where any stream of commerce ends depends on who is the "consumer" of the product via "retail sale." When the product at issue is itself an ultimate product such as a vehicle, the product reasonably is viewed as remaining in the stream of commerce from manufacturer to distributor to dealership to retail purchaser/consumer. This was the case in *World-Wide Volkswagen*.

Perhaps less clear is the identity of the consumer via retail sale of a product (*e.g*., a limit switch) that is a component part of a larger or more intricate product (*e.g*., a davit system), which itself may be a component part of another product (*e.g*., a vessel), and so on. Here it is undisputed that UMOE s.r.o. acquired the Switch in the Czech Republic via retail sale. As noted, however, Batam does not argue that UMOE s.r.o. is the relevant consumer by virtue of having acquired the Switch from a retailer; instead, Batam argues that UMOE s.r.o. is the relevant consumer because it "consumed" the Switch by incorporating it into the davit system. As also noted, that argument fails at this stage due to UMOE's evidence that the Switch was not incorporated into the davit system before it reached Alabama. The Court therefore need not decide whether the stream of commerce with respect to a component part can or does end upon its incorporation into a different product, and the Court assumes for present purposes that the Switch, if it was in the stream of commerce when it reached UMOE s.r.o., could remain there until it reached Alabama.

More problematic for UMOE is whether the Switch traveled from Indonesia to Alabama through a "regular and anticipated" stream or through an

"unpredictable curren[t] or edd[y]." As noted, UMOE has evidence that Telemecanique XS7C40FP260 limit switches like the Switch reach Louisiana in significant quantities. That evidence, along with UMOE's evidence that Schneider USA has three regional distribution centers in the United States and that an unidentified Schneider subsidiary maintains sales offices in and for the Alabama market, creates a reasonable inference that Batam's Telemecanique XS7C40FP260 limit switches reach Alabama through a regular and anticipated stream. The stream has two regular and anticipated tributaries: one flowing from Indonesia to France to Schneider USA's regional distribution centers and on to Alabama, and the other flowing from Indonesia directly to those distribution centers and on to Alabama. Had the Switch reached Alabama through either of those routes, it would have done so via the "regular and anticipated flow of [Batam's] products" from manufacture through distribution to retail sale.

That, however, is not the route the Switch took. Instead, the Switch went from Indonesia to France to Hungary to the Czech Republic to Alabama. Only the first leg of that complicated journey parallels Batam's stream of commerce to Alabama. UMOE has no explanation how the subsequent stages in that journey could be part of Batam's stream of commerce to Alabama.[5] UMOE does not suggest that this circuitous European flow is a common or even non-unique route for Batam's products to reach Alabama, and it thus must be seen as an unpredictable current or eddy rather than as the stream of commerce.

Batam relies on *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3rd Cir. 2009). (Doc. 27 at 5).[6] To reach the United States market, the defendant foreign manufacturer utilized a Colorado-based subsidiary, which sold aircraft to regional

---

[5] The Switch's travel from France to Hungary and on to the Czech Republic may be part of Batam's stream of commerce to parts of Europe, but it is not part of the stream of commerce to Alabama.

[6] Batam did not cite *D'Jamoos* in its principal brief, but it cited and discussed at length *Hinrichs v. General Motors of Canada, Ltd.*, 222 So. 3d 1114 (Ala. 2016), which in turn discussed *D'Jamoos* in detail. *Id.* at 1138-1140.

8

independent dealers for sale to retail customers around the country. *Id*. at 98. The subject aircraft did not enter Pennsylvania (or even the United States) in this fashion. Instead, the defendant sold the aircraft to a French buyer, which sold it to a Swiss buyer, which sold it to a Massachusetts buyer, which sold it to a Rhode Island buyer; the aircraft then crashed while flying over Pennsylvania. *Id*. at 99. The plaintiffs relied on a stream-of-commerce theory, which the Third Circuit rejected because the subject aircraft did not enter Pennsylvania through the "stream," or "regular and anticipated path" to that state (*i.e*., via the normal distribution channel), but "by a series of fortuitous circumstances independent of any distribution channel" the manufacturer employed. *Id*. at 105-06 (citing Justice Brennan's opinion in *Asahi*).

This case is on all fours with *D'Jamoos*. As in that case, a foreign defendant manufacturer utilized a regular distribution system bringing its product to the forum state, but the product at issue arrived in the forum state not through that system but from a series of fortuitous circumstances[7] independent of that distribution system. Because the Switch did not reach Alabama through the stream of commerce, UMOE cannot successfully rely on that theory to establish personal jurisdiction.

UMOE does not directly address this "absolutely fatal" flaw in its argument. *D'Jamoos*, 566 F.3d at 105. Instead, it stresses that Batam, by means of the distribution system described above, purposefully availed itself of the privilege of conducting activities in Alabama. Assuming without deciding that UMOE has or could demonstrate purposeful availment in this fashion, its stream-of-commerce theory still fails because, in order for them to satisfy due process, the contacts constituting purposeful availment must be the same contacts that relate to the plaintiff's cause of action or that give rise to it. *J. McIntyre Machinery*, 564 U.S. at 882 (Kennedy, J.); *Vermeulen*, 985 F.2d at 1546. UMOE's cause of action

---

[7] These include: shipment to Hungary; sale to Q-Electrik; sale to ABB; sale to UMOE s.r.o.; and shipment to Alabama.

is completely unrelated to Batam's established distribution system for reaching the Alabama market, since the Switch reached Alabama independently of that system. As the Third Circuit observed, to allow contacts with the forum based on the manufacturer's normal distribution scheme to support specific jurisdiction over a claim based on a product that did not reach the state via that scheme "impermissibly would remove the 'arising from or related to' requirement from the specific jurisdiction test and unjustifiably would treat the stream-of-commerce theory as a source of general jurisdiction." 566 F.3d at 106.[8]

Without filing a motion for such relief, UMOE requests an opportunity to conduct limited jurisdictional discovery before the Court rules on Batam's motion to dismiss. (Doc. 26 at 27-28). The proposed discovery is targeted towards "Schneider's extensive distribution network and [Batam's] reasonable expectations regarding the markets into which its products may enter." (*Id*. at 28). While certain of UMOE's proposed interrogatories and requests for production appear relevant to whether the established distribution system for its products reflects Batam's purposeful availment of the privilege of conducting activities in Alabama, (Doc. 26-13), none of them bear at all on whether the Switch's circuitous and random journey to Alabama represents the stream of commerce for Batam's products. Because the requested discovery could not possibly alter the resolution of Batam's motion to dismiss, UMOE's request for jurisdictional discovery, construed as a motion for such relief, is **denied**.

Batam attacks personal jurisdiction on a number of additional fronts. Because the foregoing discussion is dispositive, the Court pretermits discussion of those arguments.

Batam seeks dismissal with prejudice. (Doc. 23-2 at 14). This is impermissible; a dismissal for lack of personal jurisdiction must be without prejudice, which "does not preclude further litigation of [the plaintiff's] claims on

---

[8] UMOE concedes that stream-of-commerce theory is relevant only to specific jurisdiction, and it disavows any reliance on general jurisdiction. (Doc. 26 at 13-14).

10

the merits, but it does preclude that litigation from occurring in" the forum where dismissal occurred. *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 12221 (11th Cir. 1999).

For the reasons set forth above, Batam's motion to dismiss is **granted** to the extent it seeks dismissal without prejudice and is otherwise **denied**. This action is **dismissed without prejudice**.

DONE and ORDERED this 5th day of April, 2018.

<u>s/ WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE